UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES EDWARD CURTIS,<br><br>   Plaintiff,<br><br>   v.<br><br>JEFF D. PORTER,<br><br>   Defendant. | NO. 4:19-CV-5056-TOR<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant's Motion for Summary Judgment. ECF No. 23. This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed.

**BACKGROUND**

This case was filed on April 11, 2019, against Mailroom Sergeant Jeff D. Porter of the Washington State Penitentiary, in his individual and official capacity. ECF No. 1. Mr. Curtis alleges claims under 42 U.S.C. § 1983 that Sergeant Porter violated his constitutional rights under the First Amendment. *Id*. Mr. Curtis seeks

ORDER ON MOTION FOR SUMMARY JUDGMENT ~ 1

1 $100,000 in compensatory damages, as well as declaratory and injunctive relief, punitive damages, nominal damages and costs. *Id*.

The following is a chronology of events for which Mr. Curtis complains:[1] On February 12, 2018, Mr. Curtis discovered that his cell had been contaminated with human feces. ECF No. 31 at 13. Mr. Curtis wrote a letter to Mr. Holbrook, the facility's superintendent, requesting the he investigate the incident and asking him to look at the harassment log he sent his wife on the JPay message system on November 10, 2017. *Id*. He claims to have confirmed that the JPay message was still stored on his JP5 Player. *Id*. at 13-14. Shortly after mailing the letter, he learned that the November 10, 2017 message had been deleted from his JP5 Player and the JPay kiosk. *Id*. at 14. Mr. Curtis then filed a grievance claiming "somebody" deleted the message after he sent the letter to Superintendent Holbrook. *Id*. He claimed that the deletion was done in order to suppress evidence in support of his claim that his cells have been repeatedly contaminated. *Id*. Sergeant Porter was assigned to investigate the grievance. *Id.*

On March 23, 2018, Sergeant Porter met with Mr. Curtis and handed him a copy of the deleted message. *Id*. at 15. According to Mr. Curtis, Sergeant Porter

---

[1] Sergeant Porter disputes Plaintiff's statement of facts, *see* ECF No. 26, but at this stage, the facts are taken in the light most favorable to the Plaintiff.

ORDER ON MOTION FOR SUMMARY JUDGMENT ~ 2

stated that the allegations of Mr. Curtis' grievance constituted a felony, that nobody in the mailroom deleted the message, that the mailroom did not have the ability to delete the message, and that Mr. Curtis was going to withdraw his grievance. *Id*. Mr. Curtis insisted that the message was deleted and that he was not going to withdraw his grievance. *Id*. According to Mr. Curtis, Sergeant Porter then told Mr. Curtis to "give me the f**king papers back and get the f**k out of here" and "good luck getting any more of your mail." *Id*. at 16. Mr. Curtis essentially informed Sergeant Porter "that he didn't give a f**k either" and that Sergeant Porter responded, "game on." *Id*. Five days later, two of Mr. Curtis' incoming JPay messages were rejected by Sergeant Porter, but Mr. Curtis grieved that conduct which resulted in the delivery of those two messages to him. *Id*. at 16-17.

On April 8, 2020, Sergeant Porter filed a motion for summary judgment contending that Mr. Curtis fails to present evidence to support a viable First Amendment claim and that Sergeant Porter is entitled to qualified immunity from damages. ECF No. 23.

On May 11, 2020, Mr. Curtis filed his overlength opposition to Sergeant Porter's Motion for Summary Judgment. ECF Nos. 31, 31-1 through 31-5. The Court accepted the untimely, overlength response as filed. ECF No. 35.

//

# DISCUSSION

## A. Standard of Review on Motion for Summary Judgment

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. Per Rule 56(c), the parties must support assertions by: "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Liberty Lobby, Inc.*, 477 U.S. at 248.

ORDER ON MOTION FOR SUMMARY JUDGMENT ~ 4

1  Further, a material fact is "genuine" only where the evidence is such that a
2  reasonable jury could find in favor of the non-moving party. *Id.* The Court views
3  the facts, and all rational inferences therefrom, in the light most favorable to the
4  non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B. First Amendment Retaliation Claim

Defendant contends that Mr. Curtis' retaliation claims fail for several reasons: first, there are no facts supporting retaliation; second, there is no nexus of facts supporting his allegations against Sergeant Porter; and third, the temporary denial of the transmittal of two messages does not rise to the level of an adverse action to support a viable constitutional retaliation claim. ECF No. 23 at 7-8.

In order to prevail on his First Amendment retaliation claim, Mr. Curtis needs to show: "(1) . . . a state actor took some adverse action against [him] (2) because of (3) [his] protected conduct, and that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Entler v. Gregoire*, 872 F.3d 1031, 1040 (9th Cir. 2017) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

Mr. Curtis claims his First Amendment rights were violated when Sergeant Porter (a) threatened him in retaliation for his good faith use of the prison's

ORDER ON MOTION FOR SUMMARY JUDGMENT ~ 5

1  grievance procedures, and (b) took a series of adverse actions against him that
2  served no legitimate penological interest.  ECF No. 31 at 8.
3       A harm that is more than minimal will almost always have a chilling effect.
4  *Rhodes*, 408 F.3d at 567 n.11.  The "chilling inquiry" is governed by an objective
5  standard; "a plaintiff does not have to show that 'his speech was actually inhibited
6  or suppressed,' but rather that the adverse action at issue 'would chill or silence a
7  person of ordinary firmness from future First Amendment activities.'"  *Brodheim*
8  *v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 568-69
9  (original quoted source omitted)).
10      Here, the only harm directly attributed to Sergeant Porter is the statement
11 "good luck getting any more of your mail" and the denial of two incoming
12 messages which denial was grieved and the messages were then released to Mr.
13 Curtis.  ECF No. 31 at 17.  Mr. Curtis admits that he does not know who
14 previously deleted the harassment log.  ECF No. 31 at 19.  Mr. Curtis does
15 complain about Sergeant Porter not responding to Mr. Curtis' kites about the
16 appeal process for the two messages that were restricted and sharing a private
17 message intended for Mr. Curtis' wife which alleged misconduct concerning C/O
18 Ansorge.  Nothing further than this disclosure is alleged.
19      Sergeant Porter contends that he had a legitimate penological interest for
20 restricting delivery of the two messages: each message contained a court order that

appeared to relate to another inmate's information, and the mail policy prohibits mail containing other inmate information. ECF Nos. 23 at 8; 26 at ¶¶ 6-8 (Attachment A and B, referencing a suit against the Washington State Department of Corrections). Even in the light most favorable to Mr. Curtis, the messages were suspect and were rightly delayed, pending further review. This conduct does not establish retaliation, especially in light of the evidence of the nearly 200 messages that Mr. Curtis sent and received that were not delayed during this same time frame. *See* ECF No. 24 at ¶¶ 14-15.

Moreover, Plaintiff is not entitled to any particular response to his grievances or to have his grievances "processed to [his] liking." *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). Mr. Curtis appealed the restriction of his mail and received a favorable ruling. This is not an adverse action which would constitute a violation of his First Amendment rights.

Finally, Mr. Curtis is not complaining that his mail was subject to monitoring, just that some of the information in one of his messages was shared with a corrections officer. Again, this alone is not an adverse action which would constitute a violation of his First Amendment rights.

//

//

ORDER ON MOTION FOR SUMMARY JUDGMENT ~ 7

### C. Qualified Immunity

Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity balances the two important interests of holding public officials accountable when they exercise power irresponsibly and also the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id.* When this immunity is properly applied, "it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In determining a state actor's assertion of qualified immunity, a court must assess (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. 223. A court may, within its discretion, decide which of the two prongs should be addressed first in light of the particular circumstances of the case. *Pearson*, 555 U.S. at 236. If the answer to either inquiry is "no," then

the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct. *Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011).

Sergeant Porter argues he is entitled to qualified immunity as Mr. Curtis has failed to establish a constitutional violation. ECF No. 23 at 11-12. The Court agrees. As discussed above, Mr. Curtis has not established a First Amendment constitutional violation. Additionally, Sergeant Porter's reasonable belief that two messages (out of nearly 200) were suspect and required further screening, does not establish that he did not have a reasonable belief that his actions were lawful. Mr. Curtis has failed to show that a reasonable person in Sergeant Porter's position would have clearly understood that his delay of two messages violated Mr. Curtis' rights.

**D.  In Forma Pauperis**

Pursuant to 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one, and good faith is demonstrated when an individual "seeks appellate review of any issue not frivolous." *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). For purposes of 28 U.S.C. § 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court finds that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact. Accordingly, the Court hereby revokes Plaintiff's *in forma pauperis* status. If Plaintiff seeks to pursue an appeal, he must pay the requisite filing fee.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

2. All remaining motions, hearings, and trial are **VACATED**.

3. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact. Plaintiff's *in forma pauperis* status is hereby **REVOKED**.

The District Court Executive is directed to enter this Order, enter a judgment accordingly, furnish copies to the parties, and **CLOSE** the file.

**DATED** June 16, 2020.



THOMAS O. RICE
Chief United States District Judge

ORDER ON MOTION FOR SUMMARY JUDGMENT ~ 10